# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| ROSALYN LITHA CAFFEY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:15-cv-00365 |
| | ) Judge Haynes / Knowles |
| NATIONSTAR MORTGAGE, LLC., et al, | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon two Motions: the first, a Joint Motion to Dismiss for Lack of Personal and Subject Matter Jurisdiction filed by Defendants Allstate Insurance Company, Inc., Allstate Corporation (collectively "Allstate"), Nationstar Mortgage, LLC, and Safeguard Properties, LLC, pursuant to Fed. R. Civ. P. 12(b)(1),(2), (4), and (5) (Docket No. 41); and the second, a Supplemental Motion to Dismiss and Motion to Transfer Venue filed by Defendants Allstate, pursuant to Fed. R. Civ. P. 12(b)(3) and (6), and 28 U.S.C. § 1406(a) (Docket No. 64). Both Motions are supported by accompanying Memoranda of Law. Docket Nos. 42, 65.

Plaintiff has filed one Response in Opposition addressing both Motions. Docket No. 72. In support of her Response, Plaintiff has additionally filed her Affidavit, which has not been notarized. Docket No. 73.

With leave of Court (Docket No. 78), Defendants Allstate have filed a Reply. Docket No. 80.

Plaintiff, pro se, filed her Amended Complaint on May 22, 2015. Docket No. 36. Plaintiff's Amended Complaint contains 221 paragraphs alleging the following "causes of action": Count I - "Breach of Contract and Wrongful Foreclosure"; Count II - "Negligence and Vicarious Negligence"; Count III - "Breach of Contract"; Count IV - "Negligent Infliction of Emotional Duress [*sic*], Breach of Fair Dealing, and Bad Faith"; Count V - "Defamation of Character - Slander"; Count VI - "Defamation of Character - Libel"; Count VII - "Slander of Title"; Count VIII - "Invasion of Privacy"; Count IX - "Conversion of Private Property"; Count X - "Theft by Taking"; Count XI - "Fraud"; Count XII - "Deceit"; Count XIII - "Misrepresentation of Material Fact"; Count XIV - "Violation of Fair Housing Act of 1968"; Count XV - "Violation of Fair Housing Act of 1988"; and Count XVI - "Violation of Consumer Protection Act." *Id.* Because Plaintiff's Amended Complaint contains 221 paragraphs that are often repetitive, rambling, conclusory, and hard to follow, the undersigned will summarize and set forth Plaintiff's allegations below.

Defendants in this action are as follows. Defendant Nationstar Mortgage, LLC, is the mortgage company who "took control of" Plaintiff's mortgage "after Auroura Loan Services INC., was closed." Defendant Safeguard Properties "is the largest privately held mortgage field services company in the country." Defendant U.S. Properties, Inc., "is wholly independent, and unrelated to U.S. Properties located in Tennessee." Defendant Allstate Insurance Company "is the third largest personal lines insurer in the United States." Defendant Allstate Corporation "is the holding company for Defendant Allstate Insurance Company."

In her Amended Complaint, Plaintiff alleges the following.[1] Plaintiff avers that she has two residences: one, located at 906 Oneida Avenue, Nashville, Tennessee 37207, and the other, located at 2617 Peggy Sue Lane, Morrow, Georgia 30260. Plaintiff states that she purchased the home in Georgia because she has lupus; she is treated for lupus by a physician in Georgia; and the physician in Georgia advised her to move to Georgia because "the long trip from Nashville to Georgia and back to Nashville reduced the effectiveness of the medical treatments." Plaintiff avers that she moved from Tennessee to Georgia on or about August 10, 2001. Plaintiff contends that her FHA mortgage lender, National City Mortgage,[2] required that she insure the home in Georgia, so she purchased a replacement value insurance homeowner's policy from Defendant Allstate for that property. Plaintiff states that the effective date of the Allstate Property Casualty policy for her home in Georgia was on or about June 11, 2001.

Plaintiff avers that on February 18, 2013, she was hit in the head by lumber while at a Home Depot located in Nashville, Tennessee. She states that she sustained a concussion, "BPPV," vertigo, a compressed spinal cord, a swollen spinal cord, a spinal cord cyst, herniated and bulged discs at C2-C3, C3-C4 of her cervical spine, post-concussion syndrome, and a traumatic brain injury. She reports that thereafter she started medical treatments at her home in Nashville, Tennessee.

---

[1] All of the following allegations are taken from Plaintiff's Amended Complaint. Docket No. 36. Because the allegations are often repeated or spread over several counts, the undersigned has omitted individual paragraph citations.

[2] National City Mortgage transferred Plaintiff's mortgage to Auroura Loan Services on or about December 1, 2001. *Id.* On or about July 7, 2012, Defendant Nationstar Mortgage acquired Plaintiff's mortgage. *Id.* Neither National City Mortgage nor Auroura Loan Services are Defendants in this action.

Plaintiff states that, on or about February 22, 2013, she notified Defendant Allstate that she was in Nashville, Tennessee under a physician's care recovering from a concussion, spinal cord injury, and brain injury. She further states that, at that time, she provided Defendant Allstate with her Nashville, Tennessee address, telephone numbers, and email address.

Plaintiff avers that, on or about February 27, 2013,[3] she called Defendant Nationstar Mortgage and told them that she had been hit in the head by lumber at a Home Depot in Nashville and was in Nashville under a physician's care. Plaintiff states that she continued to call Defendant Nationstar Mortgage monthly, speak to a customer service representative, and pay her mortgage.[4] Plaintiff contends that when she called Defendant Nationstar Mortgage on or about March 31, 2014, to speak to a customer service representative and pay her mortgage, the customer service representative told her that she had a payment that was 30 days late. Plaintiff maintains that the customer service representative told her that she would have another payment due on April 1, 2014, but that she "would be fine" as long as she made another payment before May 1, 2014. Plaintiff states that the customer service representative also told her that because she had an FHA loan, her loan would not be called or foreclosed upon unless her payment was more than 60 days late.

---

[3] In Count II of her Amended Complaint, Plaintiff avers that this conversation happened on or about April 30, 2013. *Compare* ¶¶ 78, 79 *with* ¶¶ 100, 101, 102.

[4] In Count II of her Amended Complaint, Plaintiff avers that these monthly conversations began on or around May 31, 2013. *See* ¶¶ 105, 106.
Plaintiff also asserts that, on March 30, 2013, Defendant Nationstar Mortgage set up her mortgage account so that she could not make any payments on her mortgage without speaking to a customer service representative and explaining to the customer service representative why she had fallen behind in her mortgage. ¶ 108. Plaintiff additionally asserts that, "On or about August 30, 2013 and each month thereafter Defendant Nationstar Mortgage LLC continued to withdraw [her] monthly mortgage payments from [her] Nashville Tennessee Bank Account. ¶ 113.

Plaintiff contends that, on or about April 4, 2014, Defendant Nationstar Mortgage ordered Defendant Safeguard Properties to: (1) break in to Plaintiff's Georgia home; (2) change the locks on that home; (3) remove all of Plaintiff's possessions from the property and land; (4) break in to any locked areas inside the home; (5) take pictures of the home "and send them out for bids"; and (5) prepare the home for sale, because she "had stopped paying on [her] Nationstar mortgage, was in foreclosure, and had abandoned [her] home as [she] had lost it for none [*sic*] payment." Plaintiff asserts that Defendant Nationstar Mortgage did not send her a notice of foreclosure or notice of eviction.

Plaintiff also contends that, on or about April 4, 2014, Defendant Safeguard Properties told Defendant U.S. Properties to change the locks on Plaintiff's Georgia home. Plaintiff asserts that, on or about April 4, 2014, Defendants Nationstar Mortgage and U.S. Properties "broke into and torn [*sic*] down [her] attic door, bathroom downs [*sic*], basement doors, locked cabinets, and armed burglar alarm" Plaintiff further asserts that, on or about April 4, 2014, Defendants Safeguard Properties and U.S. Properties removed her personal property from the Georgia home.

Plaintiff further asserts that, on or about April 4, 2014, employees from Defendant U.S. Properties told the Clayton County Police that they were at Plaintiff's Georgia home to change the locks and get it ready for sale because Plaintiff had abandoned the property and the property had been foreclosed upon. Plaintiff additionally asserts that, on or about April 10, 2014, employees from Defendant Safeguard Properties, LLC, likewise told Clayton County Police that they were at Plaintiff's Georgia home to change the locks and get it ready for sale because Plaintiff had abandoned the property and the property had been foreclosed upon.

Plaintiff avers that, on or about April 10, 2014, employees from Defendant Safeguard

Properties, LLC, told Defendant Allstate Insurance Company that the property had been foreclosed upon, that "the mortgage Company" now owned the Georgia home, and that they were at Plaintiff's Georgia home to change the locks and get it ready for sale because Plaintiff had "abandoned and vandalized" the property. Plaintiff argues that the same day, Defendant Allstate "filed a claim" on Plaintiff's homeowner's policy for Defendants Nationstar Mortgage, LLC, and Safeguard Properties, LLC. She further argues that Defendant Allstate entered her Georgia home without notifying her or obtaining her permission.

Plaintiff maintains that, on or about April 14, 2014, she notified Defendant Allstate that she had not abandoned her property or lost her home in foreclosure,[5] and that Defendants Nationstar Mortgage, LLC, Safeguard Properties, LLC, and U.S. Properties, Inc., had stolen all of her personal property or "had thrown it down and damaged and or broken" her personal property, and "had broken and removed all locked cabinets, doors, closets and bins" without her permission. She states that she filed a claim with Defendant Allstate the same day for the damage done to her home and personal property. Plaintiff reports that, on or about May 14, 2014, Plaintiff gave Defendant Allstate "the Police Report case number for the break-in and theft" at her Georgia home. She avers that, on or about June 15, 2014, Defendant Allstate refused to pay Plaintiff's "vandalism and theft claim."

Plaintiff states that, on or about June 20, 2014, she called Defendant Allstate's representative to "try to get Allstate to reconsider" the claim denial, but the "Allstate Insurance adjuster would not return [her] faxes."

---

[5] She later maintains that this occurred "on or before May 24, 2014." *Compare* ¶ 125 *with* ¶¶ 135, 136.

Plaintiff avers that when Defendants Nationstar Mortgage, LLC, Safeguard Properties, LLC, and U.S. Properties, LLC, entered her Georgia home and removed and destroyed her personal property, they also "did take control over Plaintiff's medical records covered by HIPPA, final records, checks, personal property, [and] business records without limit."

Plaintiff further avers that Defendants Nationstar Mortgage, LLC, Safeguard Properties, LLC, and U.S. Properties, LLC, "did conspire, discuss, make plans, and did intentional [*sic*] submit paper and false documents to Defendant Allstate Insurance, Defendant Allstate Corporation, and the Clayton County police department to take Plaintiff['s] home and to file a false police report, and false insurance claim to get money [out of her] insurance policy, from Plaintiff's FHA warranty, and to take Plaintiff's home."

Plaintiff argues, "when Defendant Nationstar told Defendant Safeguard Properties and Defendant U.S. Properties to break-in [her] Georgia home, Defendant Nationstar Mortgage knew or should have known that [she] was not in foreclosure, that Defendant did not have the right to enter [her] home, that [she] was paying her mortgage, and that [she] had not abandon [*sic*] [her] Georgia" home.  Plaintiff also argues, "Defendant Nationstar Mortgage, Defendant Safeguard Properties, and U.S. Properties knew that they were not going by the terms of FHA, [her] mortgage, the laws of the federal and state governments and were not treating [her] in the same way Defendants treated white, able bodied borrowers."

Plaintiff contends that Defendants Nationstar Mortgage, LLC, Safeguard Properties, LLC, and U.S. Properties, LLC, "did intentionally, willingly, knowingly, recklessly, wantonly did tell lies, and false hoods, in over telephones, cell phones, in person, orally against [her] that [she] had abandon [*sic*] Plaintiff's home, Plaintiff had stop [*sic*] paying Plaintiff's mortgage and that

7

Plaintiff had vandalized Plaintiff's home, in order to damage [her] reputation and to lower the public and or various peoples [*sic*] opinion of [her] and to gain control over [her] property by lowering [her] reputation among the public, the police, Plaintiff's neighbors and Plaintiff's business associates." Plaintiff further contends that, as a result of Defendants Nationstar Mortgage, LLC, Safeguard Properties, LLC, and U.S. Properties, LLC, "properties [*sic*] lies, falsehoods, slander, breach of contract, wrongful foreclosure, illegal eviction, wanton, negligence, reckless behavior [she] lost with out limit all her person [*sic*] property, damage to [her] real property, and emotion [*sic*] distress, depression, loss of privacy, and slander, and damage to [her] reputation and character among public officials in Georgia, on the internet, and among [her] neighbors, injured [her] credit and ability to modify [her] loan of over and about $94,000.00 and cause [her] to be a victim of Identity theft, and the loss of security of [her] social security number such that fraudulent tax returns of $40,000 was made against [her], loss of over and about $250,000.00."

Plaintiff seeks: (1) a jury trial of 12 people; (2) "a judgment against the defendants for payment of all medical bills created in Nashville Tennessee as a result of Defendant home depots wantonly, reckless, and negligence actions";[6] (3) compensatory, exemplary, and treble damages; (4) punitive damages; (5) pre and post judgment interest; (6) attorney fees and legal costs[7]; (7) any other "damages or judgments the Honorable judge should determine is awardable."

Defendants filed the instant Motion to Dismiss for Lack of Personal and Subject Matter Jurisdiction arguing that this action should be dismissed because: (1) Plaintiff filed her

---

[6] Despite Plaintiff's statement, Home Depot is not a Defendant in this action.

[7] Plaintiff, however, is proceeding pro se.

Complaint against them "and via U.S. Mail, or otherwise, delivered a copy of the complaint to respective defendants without ever issuing or serving any summonses as required for the attachment of this Court's jurisdiction"; (2) "No return of process has ever been submitted to this Court for the service of the original Complaint to <u>any</u> defendant"; (3) although Plaintiff filed her Amended Complaint on May 22, 2015, she "still had no summonses issued"; (4) "Without a summons for either the original Complaint or the Amended Complaint, service cannot be effectuated" and Plaintiff "must comply with either federal and/or state service of process requirements"; (5) Plaintiff "has not issued summonses, nor followed proper service rules on any of the defendants and therefore, no personal jurisdiction has been created"; (6) there is insufficiency of process; (7) Plaintiff's Amended Complaint "fails to specify the diversity jurisdiction for which she claims" such that she has not established the basis for her claim under diversity jurisdiction; (8) Plaintiff "has now alleged that she is neither a resident of Georgia, nor Tennessee," and she has not "disclosed in which state she now claims to be a resident"; and (9) Plaintiff's "Amended Complaint presents no actual federal questions." Docket No. 41 (emphasis original).

Defendants Allstate have also filed a Supplemental Motion to Dismiss and Motion to Transfer Venue, stating in part:

> 1. This motion serves as a supplemental motion to that previously filed by all defendants on June 4, 2015. At the time, defendants contested both subject matter and personal jurisdiction. Following that motion, the plaintiff re-served all defendants with the summonses. The plaintiff also filed a motion for this Court to serve all defendants. In the meantime, the defendants filed a Joint Motion for Additional Time due to [Plaintiff] actively serving and re-serving her complaints while the Motion to Dismiss

> remained pending.
>
> 2. On July 17, 2015, this Court entered an order for the District Clerk to serve all defendants with process (Docket No. 52). [Plaintiff] has never responded to the original motion, and according to Local Rule 7.01(b), that Motion to Dismiss is without opposition and should be granted. As explained in that motion, subject matter jurisdiction under 28 U.S.C. § 1332 remains lacking and therefore under Fed. R. Civ. P. 12(b)(1), this Court lacks subject matter jurisdiction.

Docket No. 64.

Defendants Allstate also argue, "this is a Georgia case, involving property in Georgia, a Georgia insurance policy, a Georgia loan and acts and events which occurred in Georgia," such that, pursuant to Fed. R. Civ. P. 12(b)(3), Plaintiff has failed to file suit where venue is proper. *Id.* Defendants Allstate seek dismissal of this action, but in the alternative, ask this Court to transfer this action to the United States District Court for the Northern District of Georgia, which they assert is the proper venue. *Id.*

Plaintiff has filed one Response addressing both Motions. Docket No. 72. That Response consists of 62 paragraphs of random case and Rule snippets. *Id.*, p. 2-15. Plaintiff's arguments responding to the instant Motions, in their entirety, are as follows:

> 67. As a resident and citizen of the United States and Nashville, Tennessee Plaintiff Caffey had every right to file Plaintiff's case in the federal Court of the Middle District of Tennessee.
>
> 68. Plaintiff's Case was filed within the statute of limitations and is properly before the Court.
>
> 69. Witness to Plaintiff's payment of Plaintiff's mortgage and being injured and disabled are in Nashville, Tennessee, therefore it is most convenient forum.

70. Moving Plaintiff Caffey's case to a different forum would prevent Plaintiff's doctors and bank teller's from appearing in court.

71. The accident that caused Plaintiff to be disabled and away occurred in Nashville.

72. As well as Plaintiff purchased and [*sic*] Plaintiff's insurance policies in Nashville.

73. Defendant had control over and possession of Plaintiff policies [*sic*], at the time of filing; Plaintiff's complaint, Plaintiff did not have any documents to attach to the complaint; therefore, dismissal for not attaching policies or mortgage would not be in interest of justice.

74. Plaintiff Caffey has served all defendants and stated specifically what happened and why she is entitled to relief. Complaint therefore gives legally sufficient notice for Defendants to make response.

75. Plaintiff has chosen Tennessee; Defendants have not shown that witnesses or they would be hindered by the forum.

76. Therefore Defendant's [*sic*] Motion should be denied, as it has shown no grounds why another forum better [*sic*], nor why district court is improper venue.

77. Or in the alternative Plaintiff should be allowed to amend Plaintiff's complaint and move forward in the forum Plaintiff Caffey chose, or better according to Court's discretion pursuant to 28 U.S.C. § 1631.

*Id.*, p. 15.

Plaintiff has additionally submitted her un-notarized "Affidavit." Docket No. 73. In that document, Plaintiff contends that her then-current address was 906 Oneida Avenue, Nashville, Tennessee 37207. *Id.* She states that, at the time she filed the instant action on April 2, 2015, she was "physically present and living" at that address and was a resident of Nashville, Davidson

11

County, Tennessee. *Id.* She also notes that both the IRS and her last federal tax return showed that to be her address. *Id.* She maintains that, at the time she requested and purchased her Allstate Insurance policy for 2617 Peggy Sue Lane, Morrow, Georgia 30260, Allstate Insurance agent John Johnson and Defendants Allstate "knew or should have known" that she was living at 906 Oneida Avenue, Nashville, Tennessee 37207 and was a resident of Davidson County Tennessee, because they had been insuring that residence for over 8 years, and because Agent Jon Johnson came to that home. *Id.* Plaintiff maintains that she had been told by Defendants Allstate that her Tennessee address was shown as her primary residence and her Georgia address was shown as her second residence. *Id.* Plaintiff contends that she was never, at any time, told that the Allstate Insurance policy she purchased for her home in Georgia "included a clause or statement and/or condition that [she] could only bring a lawsuit against the policy [she] was buying or Allstate Insurance Company or Allstate Corporation in Georgia." *Id.* Plaintiff maintains that she has "not received any compensation for giving up [her] civil rights under the United States Constitution to be able to sue in whatever State [she] is domiciled in or for equal treatment under the law." *Id.*

As to the issue of service, Plaintiff states that she, "due diligently and without any hesitation followed Rule 4(m) of the Federal Rules of Civil Procedure and served Defendant Allstate Insurance Company Inc.'s and Defendant Allstate Corporation's President, Chairman, CEO and registered agent by first class U.S. Mail with a Notice of Waiver of Service, two copies of a completed Federal Waivers of Service made out in the name of the Defendant Companies Allstate Insurance Company Inc., and The Allstate Corporation, addressed to their President, Chairman, CEO, and Registered Agents, a copy of the complaint and a self address [*sic*] prepaid

envelope made out to [Plaintiff] with instructions to return the signed waiver to [her] within 30 days from the date of the letter (return date May 2, 2015) or 30 days from the date Defendants received the notice of waiver of process and the Complaint." *Id.* She also states that she served Defendants "diligently with the complaint, and then with a Federal Notice of Waiver of Service of Process, two copies of a completed Federal Application of Waiver of Service of Process, [her] filed complaint with case number, a self-addressed prepaid envelope, and a properly completed summons issued by the court clerk well before 90 days from the time [her] complaint was filed with the Court on April 2, 2015." *Id.* Plaintiff further asserts that she served Defendants Allstate through the Tennessee Long Arm Statute by serving the Tennessee Secretary of State and Tennessee Commissioner of Commerce and Insurance with summons after Defendants "failed to complete and sign their waiver of service of process and filed instead the motion to dismiss for having not received a summons. *Id.*

With leave of Court, Defendants Allstate have filed a Reply, arguing: (1) Plaintiff's Response fails to explain in any way how Defendants are liable for injuries Plaintiff sustained as a result of the alleged negligence of Home Depot, which is not a party to this action; (2) Plaintiff's Amended Complaint contains only conclusory allegations which attempt to hold Defendants liable; it fails to explicitly set forth factual allegations supporting her claim; (3) Plaintiff has failed to file suit where venue is proper, as this action involves a Georgia occurrence, a Georgia home loan, Georgia property, a Georgia insurance policy with a Georgia choice of law provision, Georgia witnesses, Georgia property records, and Georgia foreclosure procedures which, if improper, should be addressed by Georgia courts; (4) Plaintiff seeks relief from Home Depot, who is not a party to this action, and the fact that Plaintiff's accident occurred

in a Home Depot in Nashville is irrelevant to the instant action since she has not sued Home Depot; (5) Plaintiff's "unsworn, self-serving, and conclusory affidavit ... contains several inaccuracies"; to correct these inaccuracies, Defendant has attached a certified copy of Plaintiff's Georgia insurance policy which shows that: (a) the policy was issued by the Bill Upton Agency, located in Douglasville, Georgia, (b) the policy has a clear and explicit choice of law provision explicitly stating, *inter alia*, that "the laws of Georgia shall govern any and all claims or disputes in any way related to this policy" and that "any and all lawsuits in any way related to this policy, shall be brought, heard and decided only in a state or federal court located in Georgia"; (6) under both Georgia and Tennessee law, Plaintiff is charged with knowing the provisions in her policy, and Tennessee courts will honor a contractual choice of law provision; (7) there is no dispute that the subject choice of law provision is valid and enforceable; (8) notwithstanding the accident inside Home Depot, who is not a party to the instant action, none of the substantive events complained of occurred in Tennessee; all events occurred in Georgia; and (9) the fact that Plaintiff "has chosen" Tennessee as the state where she prefers to file her lawsuit "does not trump all other considerations," including the explicit choice of law provision in the policy, the fact that none of the named Defendants are incorporated in Tennessee, the fact that the subject property is located in Georgia, and the fact that all events occurred in Georgia. Docket No. 80.

For the reasons set forth below, the undersigned recommends that Defendants' Motions (Docket Nos. 41, 64) be GRANTED, and that this action be TRANSFERRED to the United States District Court for the Northern District of Georgia, Atlanta Division.

## II. Law and Analysis

### A. Venue

#### 1. Fed.R. Civ. P. 12(b)(3)

Fed. R. Civ. P. 12(b)(3) provides for the dismissal of a cause of action that was brought in an improper venue. Dismissal due to improper venue is within the district court's discretion, however, and although a plaintiff bears the burden of establishing that venue is proper, the district court must draw all reasonable inferences in favor of plaintiff.

#### 2. 28 U.S.C. § 1404(a)

28 U.S.C. §1404(a) allows for the transfer of a case when it was filed in an improper venue, and provides:

> **(a)** For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

When determining whether transfer is appropriate, a court should consider the following factors: (1) the plaintiff's choice of forum; (2) the convenience of the witnesses and the residence of the parties; (3) the location of sources of proof, including the availability of compulsory process to insure witness attendance; (4) the location of the events giving rise to the dispute; (5) any obstacles to a fair trial; (6) the advantage of having the dispute adjudicated by a local court; and (7) all other considerations of a practical nature that make a trial easy, expeditious, and economical. *Moses v. Business Card Exp., Inc.,* 929 F.2d 1131, 1137 (6th Cir. 1991). The moving party bears the burden of establishing that these factors weigh in favor of transferring venue. *Id.*

**B. The Case at Bar**

As can be seen in the allegations of Plaintiff's Amended Complaint, recounted above, all events relevant to the named Defendants occurred in Georgia. The only Tennessee connections are that Plaintiff has a home in Nashville and that Plaintiff was allegedly injured in a Nashville Home Depot. Home Depot, however, is not a party to the instant action.

Because this action involves a Georgia home loan, Georgia property, a Georgia insurance policy with a Georgia choice of law provision, Georgia witnesses, Georgia property records, and Georgia foreclosure procedures, and because all events complained of with respect to the named Defendants occurred in Georgia, the factors enumerated above weigh in favor of transferring venue to Georgia.

### III. Conclusion

For the reasons set forth above, the undersigned recommends that Defendants' Motions (Docket Nos. 41, 64) be GRANTED, and that this action be TRANSFERRED to the United States District Court for the Northern District of Georgia, Atlanta Division.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge